BENTON, Judge,
dissenting.
The trial judge erred in limiting Tyrone Scott’s counsel’s cross-examination of Linwood Wiggins, the inmate who testified for the Commonwealth. The questioning related to Wiggins’ bias and, thus, tended to undermine his credibility.
An accused has a right to cross-examine prosecution witnesses to show bias or motivation and that right, when not abused, is absolute. The right emanates from the constitutional right to confront one’s accusers.
Brown v. Commonwealth, 246 Va. 460, 464, 437 S.E.2d 563, 564-65 (1993).
The majority holds that the trial judge’s error was harmless. I disagree. The rule is well established that “ ‘[a] fan-trial on the merits and substantial justice’ are not achieved if an error at trial has affected the verdict.” Lavinder v. Commonwealth, 12 Va.App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (en banc) (quoting Code § 8.01-678). Thus, “a harmless error analysis ... [is not] simply a sufficiency of the evidence analysis.” Hooker v. Commonwealth, 14 Va.App. 454, 458, 418 S.E.2d 343, 345 (1992). Even if “the other evidence amply supports the jury’s verdicts, [error is not harmless when] the disputed testimony may well have affected *46 the jury’s decision.” Cartera v. Commonwealth, 219 Va. 516, 519, 248 S.E.2d 784, 786 (1978).
Both Zenobia Jones and Tamika Young testified for the Commonwealth concerning the events that occurred in Jones’ house. Both testified that Jones, Young, Kimberly Taylor, Tyrone Scott, and the victim had spent most of the day drinking beer and using both cocaine and heroin. Young testified that in the evening she and the victim went upstairs, disrobed, and began to engage in sexual touching. When the victim refused to pay Young for sexual acts, Taylor entered the room and attempted to force the victim to pay Young. Young testified that Taylor and the victim began to fight. During the fighting, the victim hit Young and pushed her to the floor. After Young was pushed to the floor, she called Scott to stop the fighting. The testimony of the events that then followed was in conflict.
Young testified that Scott came upstairs and only became involved in the dispute after the victim hit Young. Young testified that Scott asked the victim to give Young the money he owed her. Young testified that after Scott spoke to the victim, the victim and Scott started fighting. The fighting moved from the bedroom to a room downstairs. Young testified that Taylor hit the victim while Scott held him. She also testified that Taylor stabbed the victim and strangled him.
Jones testified that sometime after 8:00 p.m. Taylor, Young, Scott, and the victim were “shoving amongst themselves.” Jones said that she ordered them to leave her house. All of them walked down the stairs. Jones testified that after she ordered all of them to leave her house she saw Scott holding the victim and did not know “whether [Scott] was helping him or steadying him.” She testified that she did not see Scott hit the victim. However, as Jones opened the door, Taylor became aggressive and began hitting the victim with an object. Young testified that Taylor hit the victim with a glass object and strangled him.
*47 Wiggins, the prison inmate who was not present at the house, testified that Scott said he hit the victim with an ashtray. Wiggins also testified that Scott said he got involved in the dispute because the victim had a thousand dollars.
Scott testified that he only hit the victim to defend himself when the victim became belligerent. Both Young and Taylor testified that Scott asked Taylor to stop assaulting the victim. Indeed, Scott’s testimony that he only hit the victim in self-defense is not inconsistent with the testimony of Jones and Young.
The testimony concerning Scott’s participation was conflicting. Although Wiggins testified that Scott admitted hitting the victim with an ashtray, both Young and Jones testified that Taylor, not Scott, hit the victim with an object. Young also testified that Taylor stabbed the victim with an object. Neither Jones nor Young testified that Scott hit the victim with any object. Thus, the jury was required to resolve four different versions of the events from the testimony of the three people who were in the house — Jones, Young, and Scott — and Wiggins, who was not present.
Wiggins’ testimony was offered by the Commonwealth to fill substantial gaps in its case and to support the inferences the jury was required to draw to convict Scott. Indeed, only Wiggins’ testimony, if believed, proved that Scott hit the victim with an ashtray and tended to prove that Scott took money from the victim. Thus, on one hand, if the jury believed Wiggins, the jury could have reached the same verdicts based solely on his testimony (i.e., even if the jury disbelieved the testimony of Young, Jones, and Scott). On the other hand, if the jury had disbelieved Wiggins’ testimony, the jury would have had no evidence to support a finding that Scott hit the victim with any object and could only speculate that Scott took money from the victim or that any money was even taken from the victim. Moreover, Wiggins’ testimony was the only evidence that directly contradicted Scott’s assertion that he acted in self-defense. Thus, Wiggins’ credibility was critically important.
*48 In finding the error harmless, the majority posits that other witnesses proved facts in dispute. However, that “[o]ther evidence of a disputed fact [exists in the record] ... does hot establish that an error is harmless.” Hooker, 14 Va.App. at 458, 418 S.E.2d at 345. It is well settled that the credibility of witnesses, the weight accorded witnesses’ testimony, and the inferences to be drawn from proven facts are matters that are within the province of the fact finder. See Barrett v. Commonwealth, 231 Va. 102, 107, 341 S.E.2d 190, 193 (1986). When the trial judge errs in limiting a defendant’s cross-examination of a witness on a matter that bears on credibility, that error cannot be harmless where the determination of the sufficiency of proof involves the jury’s assessment of that witness’ credibility. See Waller v. Commonwealth, 22 Va.App. 53, 61, 467 S.E.2d 844, 848 (1996). Because the jury could have founded its verdicts on Wiggins’ testimony, the trial judge’s limitation of Scott’s counsel’s examination of Wiggins for bias cannot be harmless.
Wiggins’ testimony was the only evidence that tended to prove Scott premeditated the killing and hit the victim with an object to take his money. His testimony was the strongest evidence tending to prove Scott acted with malice. Most importantly, Wiggins was the only -witness whose testimony directly contradicted Scott’s testimony. Thus, it cannot be said, as the majority asserts, that Wiggins’ testimony was merely cumulative.
The majority concludes that the evidence would have had little impact because “the issue of Wiggins’ bias and motive to lie was [already] ... before the jury” and the crimes excluded were less serious than the crimes admitted. Even assuming that the jury would have only slightly further discounted Wiggins’ testimony, the effect on the verdict — the relevant harmless error issue — may have been significant. Wiggins’ testimony was critical to the prosecution and extremely damaging to Scott’s defense. Even the slightest further diminution of Wiggins’ credibility may have had a significant impact on the verdict. As the Supreme Court stated in Brown:
*49 We do not accept the Commonwealth’s suggestion that any error was harmless. [The witness’] testimony was the only evidence directly identifying [the accused] as the perpetrator of the murder. It is true that the Commonwealth presented certain circumstantial evidence that implicated [the accused], but this evidence alone may not have been sufficient to support the conviction.
246 Va. at 465, 437 S.E.2d at 565.
Scott testified that he was merely defending himself. His testimony was not inconsistent with the testimony of Jones and Young, the Commonwealth’s witnesses. Indeed, upon the evidence proved at trial, the trial judge instructed the jury that it could render a verdict of manslaughter, a killing committed without premeditation or malice. Moreover, based on the verdict of second degree murder, the conclusion is inescapable that the jury disbelieved Wiggins’ testimony to the extent that it was offered to prove premeditation. Thus, had Scott’s counsel been permitted to develop fully Wiggins’ possible bias, the jury may have further discounted Wiggins’ testimony and rendered a verdict of manslaughter.
The majority states that “the extent to which Wiggins’ testimony established premeditation is immaterial to [Scott’s] conviction for second degree murder.” That assertion ignores the harmless error inquiry — whether the error may have affected the verdict. See Cartera, 219 Va. at 519, 248 S.E.2d at 786. Wiggins’ testimony was the only evidence that tended to prove Scott possessed the most blameworthy state of mind — premeditating a malicious killing. Because Wiggins’ testimony was extremely prejudicial as to malice, it cannot be said that the error did not affect the verdict simply because the jury did not convict for first degree murder. Wiggins’ testimony may have caused the jury to find second decree murder instead of finding manslaughter or acquitting Scott.
Obviously, from the record in this case “[w]e cannot say beyond a reasonable doubt that, if the jury had believed [Wiggins’] testimony was unreliable, the[ ] verdict would have been the same.” Whittaker v. Commonwealth, 217 Va. 966, *50 970, 234 S.E.2d 79, 82 (1977). We cannot say that if the evidence relating to Wiggins’ bias had been thoroughly explored, the jury nevertheless would have credited his testimony as proof of malice and returned the same verdict. See id. That is, we cannot exclude the possibility that, had Wiggins’ bias been further revealed, the jury would have returned a verdict of voluntary manslaughter or not guilty.